**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TROY BONG, ) <br> ) <br> Defendant. ) <br> _____ ) | **CRIMINAL ACTION** <br><br> No. 13-10004-MLB |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion to suppress. (Doc. 15). The motion has been fully briefed and is ripe for decision. (Doc. 17). The court held an evidentiary hearing on May 14, 2013. Wichita police officer Robert Thatcher testified. The court advised defendant of his right to testify and call witnesses. Defendant stated that he understood his right and declined to testify and call witnesses.

**I.    Facts**

On December 22 at 7:28 p.m., officers Springob[1] and Thatcher were parked outside of a house which was the subject of a drug investigation. While observing the house, they witnessed individuals leave the house in a vehicle. Springob followed the vehicle and observed that the driver failed to activate the turn signal 100 feet prior to the intersection. The driver did not activate the signal until the vehicle stopped at the intersection. Springob activated his lights and conducted a traffic stop. Both Springob and Thatcher

---

[1] Officer Springob did not testify at the suppression hearing.

exited the patrol car. Springob approached the driver and Thatcher approached the passenger's side of the vehicle. Thatcher had a flashlight and used it to look in the vehicle as he approached. Thatcher observed defendant sitting in the passenger seat and Thatcher thought that defendant looked familiar. Thatcher spoke with defendant through the window and asked for his identification. Defendant opened the door to hand Thatcher his identification. Thatcher observed a cigarette package in the door. At this time, defendant was staring straight ahead and rubbing his hands on his legs. After reviewing the license, Thatcher remembered that he had stopped defendant four years ago and arrested him for possession of methamphetamine and a firearm violation.

Thatcher observed that defendant was sweating, breathing heavy and not making eye contact when Thatcher was talking to him. Thatcher asked defendant to exit the vehicle because he was concerned for his safety and believed that defendant may be armed. Defendant did not respond to Thatcher's request. Thatcher had to repeat his request three or four times before defendant got out of the vehicle. When defendant did step out, he turned his body to the side with his right hip back towards the vehicle. Thatcher believed that defendant was trying to hide something from him. Thatcher proceeded to initiate a pat down for weapons and observed a knife clipped in defendant's jacket. Thatcher grabbed the knife out of the jacket and defendant flinched and backed away. Defendant told Thatcher that he had other knives on him.

Thatcher then told defendant to put his hands up on the vehicle. Defendant turned and faced the vehicle. Thatcher placed his

-2-

hands on top of defendant's hands in preparation for the pat down. Defendant then attempted to duck out from under Thatcher. Thatcher kept hold of defendant's hands when he moved because he believed defendant had a gun. Thatcher and defendant both ended up on the ground. Defendant got up first and went into a kneeling position. Thatcher kicked defendant two or three times in the stomach and a black object fell out on the ground. Thatcher called for his partner and yelled "gun." Defendant was restrained and a gun was retrieved on the ground. The time involved in this altercation, from the beginning of the stop to the arrest, was only two or three minutes.

Defendant moves to suppress the gun seized by Thatcher on the basis that the detention was unreasonable and the force used by Thatcher transformed the contact into an illegal arrest.

**II. Analysis**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has liberally interpreted "seizures" to encompass routine traffic stops, "even though the purpose of the stop is limited and the resulting detention quite brief." See Delaware v. Prouse, 440 U.S. 648, 653 (1979). "Because an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest," the stops are analyzed under the principles articulated in Terry v. Ohio. United States v. King, No. 05-6399 (10th Cir. Dec. 18, 2006). The two-pronged standard espoused in Terry v. Ohio, 392 U.S. 1 (1968), thus applies, see United States v. Caro, 248 F.3d 1240, 1244 (10th Cir. 2001), and renders a traffic stop reasonable if "the officer's

-3-

action was justified at its inception, and [if] it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20. An initial traffic stop is justified at its inception if it was "based on an observed traffic violation," or if "the officer has a reasonable articulable suspicion that a traffic . . . violation has occurred." United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998).

In this case, the undisputed facts show that the traffic stop was justified.[2] Defendant also does not challenge Thatcher's right to conduct a pat down search of defendant's person. See United States v. Albert, 579 F.3d 1188, 1195 (10th Cir. 2009)("During an investigative detention, police officers are authorized to take reasonable steps necessary to secure their safety and maintain the status quo. In some circumstances, these safety measures may include a pat-down search for weapons.") Therefore, the only issue in this case is whether the investigative detention was transformed to an illegal arrest without probable cause.

Defendant argues that the force used by Thatcher was excessive and not reasonable under the circumstances. The court disagrees. "Whether police conduct was 'reasonably related in scope to the circumstances which justified the interference in the first place,' is a fact-sensitive inquiry and depends on 'the totality of circumstances in a given case.'" United States v. Salas-Garcia, 698 F.3d 1242, 1249-50 (10th Cir. 2012). "Since police officers should not be required to take unnecessary risks in performing their duties,

---

[2] Defendant does not dispute the lawfulness of the traffic stop. (Doc. 15 at 4).

-4-

they are 'authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a Terry] stop.'" United States v. Neff, 300 F.3d 1217, 1220 (10th Cir. 2002)(internal citations omitted).

Thatcher had reason to believe defendant was armed based on a past interaction with defendant. Moreover, defendant was observed leaving a known drug house and the Tenth Circuit has recognized that a "connection with drug transactions can support a reasonable suspicion that a suspect is armed and dangerous." Id. at 1250. Thatcher was attempting to pat down defendant for his own safety when defendant tried to escape. Thatcher was forced to use his feet to attempt to control defendant because Thatcher did not want to release his hold on defendant's hands. Thatcher was justifiably concerned that defendant would be able to reach for a weapon if Thatcher were to let go of defendant's hands. Therefore, Thatcher's use of force was enough, given the circumstances, to gain control of the situation and was not excessive.[3] See United States v. Chavez, 812 F.2d 1295, 1301-02 (10th Cir. 1987)(use of physical force to subdue defendant and perform a pat down was reasonable considering the circumstances in that the defendant had participated in a drug transaction and the officers believed that he was armed).

In sum, Thatcher's limited use of his feet to knock defendant to the ground was reasonable and justified. Thatcher's action did not transform the Terry stop into an illegal arrest. Defendant's motion to suppress is therefore denied. (Doc. 15).

---

[3] There was no evidence of any injuries sustained by defendant.

IT IS SO ORDERED.

Dated this __12th__ day of June 2013, at Wichita, Kansas.

>   s/ Monti Belot
>   Monti L. Belot
>   UNITED STATES DISTRICT JUDGE