IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    Crim. Case No. 6:13-cr-10004-JTM-1
                                    Civ.  Case No. 6:16-cv-01088-JTM

TROY A. BONG,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on defendant Troy Bong's Motion to Vacate Sentence under 28 U.S.C. § 2255 (Dkt. 66) and Second Motion for Leave to Amend the § 2255 Petition (Dkt. 89).[1] For the reasons set forth herein, defendant's motion to amend his petition is granted, but his motion to vacate sentence is denied.

**I. Background.**

On January 8, 2013, defendant Troy Bong was charged by indictment with one count of unlawful possession of a firearm and ammunition by a previously convicted felon under 18 U.S.C. § 922(g). Dkt. 1. Assistant Federal Public Defender Steven K.

---

[1] Defendant has filed a 158-page *pro se* Reply Brief (Dkt. 96) that attempts to raise a multitude of claims in addition to those set forth in the original or amended § 2255 motions. To the extent the Reply attempts to raise new claims, those claims are barred because they have been raised outside the applicable one-year statute of limitations. *See United States v. Guerrero*, 488 F.3d 1313, 1316 (10th Cir. 2007) ("When a § 2255 movant seeks to amend his pleading to include a new claim, we will only entertain this claim if the amendment is made within the one-year time limit set by AEDPA."). To the extent the Reply raises new arguments (but not new claims) that were not set forth in his initial or amended § 2255 motions, those arguments are considered waived. *See United States v. Herget*, 585 Fed. App'x 94, 950 (10th Cir. Sept. 24, 2014). Nevertheless, the court has addressed the merits of the arguments contained in the Reply Brief to the extent feasible.

Gradert was appointed to represent him. Mr. Gradert filed a motion to suppress evidence of the firearm, arguing that police discovered it through an unlawful detention, an arrest without probable cause and/or through excessive force. Dkt. 15. The Hon. Monti L. Belot held a suppression hearing and denied the motion, finding that officers were justified in stopping the car in which defendant was riding, that they had reason to suspect he was armed and to pat him down, and that they used reasonable force to subdue him after he attempted to escape an officer's grasp. Dkt. 18.

The defense initially scheduled a change of plea hearing (Dkt. 20), but defense counsel sought a continuance to resolve issues concerning defendant's criminal history and to discuss those issues with defendant. Dkt. 22.  The case was subsequently reset for jury trial. A three-day jury trial was held beginning August 21, 2013. Seven witnesses testified, including the two officers who stopped the car in which defendant was a passenger. The Government presented evidence that a gun fell out of defendant's waistband during a scuffle with one of the officers after defendant resisted the officer's attempt to pat him down. The defendant testified and denied that he possessed the gun. The defense also presented testimony from a friend of the defendant, who said he had been in possession of the gun and was walking down the street toward defendant's car when he saw the police lights. He said he dropped the gun, presumably in the area where defendant was later wrestled to the ground by the officer, and ran. The jury returned a verdict of guilty. Dkt. 35.

A Presentence Report (PSR) was prepared. Dkt. 36. Defendant's offense level under the sentencing guidelines would have been 24, but due to a finding that he had

"at least three prior convictions for a violent felony or serious drug offense, or both," he was classified as an armed career criminal and was subject to an enhanced sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), and USSG § 4B1.4. Dkt. 36 at 7. The predicate offenses were identified as: "88CR2122 Residential Burglary; 90CR610 Robbery; 90CR622 Robbery (2 Counts), Aggravated Robbery (3 Counts), Attempted Robbery; and 99CR61 Trafficking Contraband Into a Correctional Facility." *Id.*

As an armed career criminal, defendant's offense level became 33 and he was subject to a statutory minimum sentence of fifteen years under § 924(e)(1). Defendant's criminal history points totaled 31, which placed him in the highest Criminal History Category (VI). Defendant's applicable guideline range was 235 to 293 months. Neither party filed objections to the PSR, although defense counsel filed a sentencing memorandum asking the court to vary downward to 180 months, the statutory minimum. Dkt. 37. Judge Belot rejected the request and sentenced defendant to 293 months, the top of the guideline range.

Mr. Gradert filed a Notice of Appeal on defendant's behalf. Dkt. 42. Defendant subsequently retained counsel to pursue his appeal, in which he challenged the denial of his motion to suppress evidence and the admission of two statements at trial that were allegedly improper. The Tenth Circuit rejected the arguments and affirmed the judgment. *United States v. Bong*, 596 Fed.App'x 607 (10th Cir. 2014). The mandate was issued on January 9, 2015, Dkt. 62, and a petition for writ of certiorari was denied. *Bong v. United States*, 135 S.Ct. 1873 (Apr. 20, 2015) (No. 14-8857).

**II. § 2255 Motion.**

Defendant timely filed a § 2255 motion asserting twenty-two claims. Dkt. 66. Twenty of his claims allege that defendant received ineffective assistance of counsel, either from his trial counsel or from appellate counsel. One or more of the claims is based on *Johnson v. United States*, 135 S.Ct. 2551 (2015), and alleges that defendant's prior offenses do not qualify as violent felonies in light of *Johnson*. Other claims allege that defendant's right to due process was violated by admission of certain evidence or by comments of the prosecutor.

With the assistance of counsel, defendant filed a motion to amend his § 2255 petition, in which he argued that his prior conviction for trafficking contraband in a correctional facility did not qualify as a "serious drug offense" under 18 U.S.C. § 924(e)(2)(A). Dkt. 84. The court granted the motion to amend insofar as it alleged that defendant's counsel was ineffective for failing to argue that this conviction did not qualify as a predicate felony for armed career criminal status. Dkt. 88 at 2. Shortly after the court granted that motion, defendant filed another motion again seeking to amend the petition, Dkt. 89, in which he asserted that his 1998 Kansas conviction for burglary did not qualify as a violent felony under the ACCA, and that his counsel was ineffective for failing to raise that issue at sentencing or on appeal. *Id*. at 8.

**III. Analysis.**

A. *Standard for Ineffective Assistance of Counsel*.

Ineffective-assistance-of-counsel claims are analyzed under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that his

counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88. "This standard is extremely deferential and employs a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Walton*, 2016 WL 4539941, at *2 (10th Cir. Aug. 30, 2016) (*citing Strickland*, 466 U.S. at 689). Second, the defendant must show that his counsel's deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 692. This means the defendant must show that there is a reasonable probability that, but for his counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. The court may dispose of a claim for ineffective assistance of counsel on either part of the *Strickland* standard, as a failure of either component is fatal to the claim. *See Walton*, 2016 WL 4539941, *2.

> <u>*Ground One*</u>.

Defendant contends his prior offenses do not qualify as crimes of violence after *Johnson* "because they do not require the use, attempted use or threatened use of physical force." Dkt. 66 at 4. The court rejects this argument, as defendant has at least three convictions under Kansas law for robbery or aggravated robbery, and the court concludes that these offenses qualify as violent felonies under the ACCA.

Under the ACCA, a person who violates § 922(g) and who has "three previous convictions … for a violent felony …, committed on occasions different from one another" is subject to a mandatory minimum 15-year sentence. 18 U.S.C. § 924(e)(1). Additionally, the person's guideline offense level and criminal history category are

enhanced. *See* USSG 4B1.2.[2] The term "violent felony" includes any crime punishable by imprisonment for a term exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i). The phrase "physical force" means force capable of causing physical pain or injury to another person. *Johnson v. United States*, 559 U.S. 133, 140 (2010).

Defendant was convicted in a Kansas district court on May 29, 1990, of three counts of robbery, three counts of aggravated robbery, and one count of attempted robbery. Dkt. 36 at 16-19.  The PSR, which was not objected to, shows that these offenses occurred on March 17, 1990; March 22, 1990; March 25, 1990 (two offenses); March 29, 1990; April 3, 1990; and April 6, 1990.  At the time of the offenses, Kansas law defined robbery as "the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another by force." K.S.A. § 21-3426 (1990). Aggravated robbery was "a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm on any person in the course of such robbery." K.S.A. § 21-3427 (1990). Robbery was a Class C felony and aggravated robbery was a Class B felony, punishable respectively by terms of imprisonment of at least three and five years. K.S.A. § 21-4501 (1990).

As this court concluded in *United States v. Nicholas*, No. 14-10005, 2016 WL 300897 (D. Kan. Jan. 25, 2016), the elements of robbery under Kansas law incorporate the "physical force" necessary to constitute a violent offense under § 924(e)(2)(B). *See*

---

[2] Because defendant was already in the highest criminal history category (VI) without the § 4B1.2 enhancement, the criminal history category enhancement had no effect on his guideline range.

*Nicholas*, 2016 WL 300897, *3. *See also Robinett v. United States*, No. 08-00264-CR-W-GAF-1, 2016 WL 2745883, at *4 (W.D. Mo. May 11, 2016) (Kansas robbery qualifies as violent felony); *United States v. Brown*, 550 F.3d 724, 729 (8th Cir. 2008) (Kansas conviction for aiding a felon in the commission of an aggravated robbery has as an element "the use, attempted use, or threatened use of physical force against the person of another.").

The element of force or threat of bodily harm in Kansas robbery materially distinguishes this offense from *Johnson v. United States*, 559 U.S. 133 (2010), where the court found that a battery consisting of any intentional touching, "no matter how slight," did not require the degree of physical force necessary for a crime of violence under § 924. *Id.* at 138. The Kansas element of the intentional use of force or threat of bodily harm necessarily contemplates force capable of causing pain or injury, placing this offense squarely within the violent felonies Congress had in mind in adopting the ACCA. *See id.* at 139 (noting *Black's Law Dictionary* definition of physical force as "[f]orce consisting in a physical act, esp. a violent act directed against a robbery victim"). *See also State v. Aldershof*, 220 Kan. 798, 556 P.2d 371 (1976) (a "sneak thief" who snatched a purse from victim's lap was not guilty of robbery; in robbery the taking must be accomplished by violence or intimidation); *State v. Miller*, 53 Kan. 324, 36 P. 751 (1894) (robbery is not committed where the thief obtains peaceable possession of the property and uses no violence). Defendant offers up a multitude of reasons for not considering Kansas robbery as a crime of violence. Dkt. 95 at 12-39. But contrary to his argument, he cites no Kansas Supreme Court case finding the force element of robbery to be satisfied by evidence of "any physical contact" with the victim. To the contrary, Kansas cases

characterize robbery as a taking accomplished by violence or intimidation.  Nothing in *Johnson* undermines the common sense conclusion that the taking of property from a person "by force" or "threat of bodily harm" contemplates "the use … or threatened use of physical force against another." § 924(e)(2)(B)(i).

Although defendant's seven or so robbery offenses (including aggravated robbery) were largely consolidated for charging and sentencing, they occurred (with one exception) on different dates, and were thus "committed on occasions different from one another." *See United States v. Tisdale*, 921 F.2d 1095, 1098 (10th Cir. 1990) (§ 924(e)(1) was intended to reach multiple criminal episodes distinct in time); *United States v. Martin*, 526 F.3d 926, 940 (6th Cir. 2008) (the fact that multiple offenses were charged in one indictment and consolidated for plea purposes is irrelevant, as is the fact that the sentences for multiple offenses ran concurrently). They were also punishable by imprisonment for more than one year, and constituted offenses containing as an element the use or threatened use of physical force against the person of another. As such, defendant was properly subjected to the ACCA enhancement in § 924(e)(1) and USSG § 4B1.2.

<u>*Ground Two*</u>.

Defendant alleges that his right to effective assistance of counsel was violated when appellate counsel failed to raise the following issues on appeal: the district court's ruling on a motion in limine pertaining to a duress defense; the elements of the plain error rule regarding the admission of certain statements at trial; and "fast developing

legal issues regarding [the] Armed Career Criminal Act and enhanced sentence." Dkt. 66 at 6.  None of these arguments provide grounds for relief.

Defendant's first issue concerns a motion in limine filed by the government to keep defendant from asserting a duress defense. *See* Dkt. 26. When a hearing was held on the motion, defense counsel informed the court that "we don't intend to offer a coercion or duress defense in this case," which rendered the motion moot. Dkt. 49 at 7. The reason for this strategic choice was obvious: because the defense intended (and did) put on evidence that defendant never possessed the gun, and that it was left on the ground by defendant's friend, which would have been inconsistent with any claim that defendant possessed the gun because he was coerced into doing so.[3] Defendant makes no showing that it was professionally unreasonable for his counsel not to raise this issue on appeal, and makes no showing that the results of the appeal likely would have been different had the issue been raised.

Defendant's second complaint refers to the Tenth Circuit's finding that defendant failed to argue or show the third and fourth elements of plain error with respect to admission of one officer's testimony about defendant's body language, and with respect to an unidentified comment by the prosecutor that allegedly bolstered the credibility of government witnesses. *See* Dkt. 62 at 13. But even assuming defendant's

---

[3] At trial, defendant testified as follows:
  Q. Okay. Did, did you have a gun on you?
  A. No.
  Q. Did you know there was a gun in the car?
  A. Hell, no, I didn't.
  Q. At any point in time?
  A. No.
Dkt. 51 at 85.

appellate counsel should have argued these elements, defendant makes no showing that it made any difference. Defendant's complaint about the officer is that he was not properly qualified as an expert and should not have been allowed to offer opinions about defendant's body language. But the "expert" testimony was essentially nothing more than the officer's belief that the defendant appeared to be hiding something from him by "blading" his body – i.e., turning sideways  - when the officer faced him and tried to talk to him. That was a rational inference based on the witness's perception, and therefore admissible under Fed. R. Evid. 701. But even if not, defendant fails to show that the witness would not have been allowed to express such an opinion under Rule 702 based on his experience. As for the prosecutor's allegedly improper comments, defendant's § 2255 motion fails to identify the comments or show that they affected the trial. The court notes that defendant's appellate counsel in fact claimed that several questions or comments by the prosecutor were improper, but the Tenth Circuit found no basis for reversing the conviction.[4] Again, defendant fails to show a basis for finding his counsel's performance deficient or for concluding that the alleged deficiency likely made any difference in the outcome. Even if defense counsel might have successfully objected to the prosecutor asking defendant about whether he thought the officer "was lying," such questions could have easily been reframed to make the same point, and the prosecutor was at liberty to highlight the contradiction in testimony in closing arguments. A reasonable defense attorney might have concluded that raising an

---

[4] The court takes judicial notice of defendant's appellate brief on direct appeal. *United States v. Bong*, No. 13-3301 (Appellant's Brief filed May 3, 2014).

objection would not have benefitted defendant and would only have drawn more attention to the contradiction.

Defendant's third contention is that his counsel failed to argue "fast-developing legal issues" under the ACCA. For the reasons discussed under Ground One, the court finds defendant was appropriately subjected to the ACCA enhancement and that any failure by his attorneys to argue ACCA issues would have made no difference in the outcome of the case.

> *Ground Three*.

Defendant contends he was denied effective assistance of appellate counsel when his attorney "failed to raise Prosecutor Misconduct issues," including an alleged misstatement in closing argument that defendant admitted to possessing the firearm in his waistband, and vouching for the credibility of police witnesses. Dkt. 66 at 7.  An examination of the record, however, shows that defendant is not entitled to relief.

Officer Thatcher testified that after defendant was arrested, he admitted having possessed the gun in his waistband and told Thatcher that he resisted because he was hoping to be able to toss the gun away and avoid being charged. Dkt. 49 at 62-63. The prosecutor summarized these admissions in closing argument and told the jury it could consider the statements. Dkt. 58 at 33. The prosecutor added, "Because he told us earlier yesterday: I didn't think I was gonna get out of the car so I put it in my waistband." Dkt. 58 at 33. Defendant objects that the latter comment misstated the evidence. The

source of this particular comment is unclear and may in fact have been a misstatement.[5] But even assuming it was, it provides no grounds for relief. Such an isolated comment did not deprive defendant of a fair trial and could not have affected the verdict. The district court instructed the jury that statements and arguments of counsel were not evidence, Dkt. 29 at 27, and there is no reason to suppose the jury did not heed that admonition. Moreover, given the state of the evidence, which included Thatcher's testimony that he saw what appeared to be a gun fall from defendant's waistband and that the officers found a gun directly underneath defendant when he was subdued, as well as the defense's implausible explanation that the gun must have been dropped in that precise location by an unseen friend, there is no reasonable possibility that any such stray comment by the prosecutor had any effect on the verdict. *See United States v. Rogers*, 556 F.3d 1130, 1141 (10th Cir. 2009); *United States v. Howell*, 573 Fed.App'x 795, 802 (10th Cir. 2014) ("the existence of a factual error is not by itself sufficient to demonstrate prejudice").

Defendant also claims his counsel should have argued that the prosecutor improperly vouched for the credibility of police witnesses during closing argument. But he cites no example of improper vouching. Government counsel is free to direct the jury's attention to evidence that enhances or diminishes a witness's credibility. *United States v. McIntosh*, 2016 WL 4159723, *19 (D. Kan. Aug. 5, 2016). Improper vouching

---

[5] The statement may have conflated defendant's alleged admission to Thatcher (that he had possessed the gun in his waistband) with defendant's rather stream-of-consciousness testimony in which he said, among other things, that he initially believed he did not have to get out of the car, that he attempted to conceal some methamphetamine when he realized the officer was insisting that he get out, and that if he had possessed a firearm, he wouldn't have gotten out with it in his waistband, but would have hidden it in the console next to him. Dkt. 51 at 85.

occurs only if the prosecutor indicates a personal belief in the witness's credibility by explicit personal assurances or by indicating that evidence not presented to the jury supports the witness's testimony. *Id*. (citations omitted).  Defendant shows no improper vouching and no unreasonable failure to object or raise the issue by his counsel.

## Ground Four

Defendant argues he was deprived of effective assistance of counsel when his appellate attorney did not seek rehearing of the Tenth Circuit's ruling on his motion to suppress evidence. Defendant has shown no error in the Tenth Circuit's ruling or that his counsel unreasonably failed to pursue such a claim.  He alleges generically that "the record was misread" by the Tenth Circuit, but cites no basis for that claim.  He has failed to show that counsel was deficient or that the deficiency was prejudicial.

## Ground Five

Defendant next challenges appellate counsel's failure to challenge three jury instructions given at trial. First, he complains that the district court gave an instruction cautioning the jury to consider the testimony of drug abusers "with greater care" than the testimony of witnesses who do not abuse drugs. The Tenth Circuit has held that "the drug abuser instruction should generally be given when a known drug abuser testifies." *United States v. Davis*, 286 Fed.App'x 574, 581, 2008 WL 2926408 (10th Cir. 2008) (*citing United States v. Smith,* 692 F.2d 658, 661 (10th Cir. 1982)). Because a witness's ability to perceive or recall events is implicated by drug use, it is highly doubtful that the giving of such an instruction could amount to error. Defendant fails to show that counsel acted unreasonably by not challenging the instruction.

13

Defendant next complains about counsel's failure to appeal the district court's giving of an instruction concerning testimony by a convicted felon. But the instruction told the jury to determine the credibility of such a witness's testimony "the same as you would the testimony of any other witness." Dkt. 29 at 24. The instruction could not have been prejudicial, and counsel's failure to raise the issue was not unreasonable.

Defendant's third complaint concerns the "trial court's use of excessive and unnecessary (31) jury instructions[,] which served to confuse the jury." Dkt. 66 at 10. Defendant makes no showing that the trial court erred or that counsel's failure to challenge the number of jury instructions was objectively unreasonable.

_Ground Six_

Defendant claims his Fifth and Sixth Amendment rights were violated because trial counsel "failed to renew [the] motion to suppress, at trial, which had the effect of [the] 10th Circuit's review excluding evidence that came out at trial[,] which would have likely resulted in a favorable ruling for Defendant." Dkt. 66 at 11. This claim is based on the Tenth Circuit's opinion declining to consider defendant's claim that his Fourth Amendment rights were violated by Officer Springob intentionally kneeing him in the groin during the struggle. Dkt. 62 at 13, n.5. The Circuit noted that although such evidence was introduced at trial, it was not introduced at the suppression hearing, and the court would not consider it because defendant had not renewed his motion to suppress at trial. _Id_.

Defendant's claim that such evidence would have resulted in a favorable ruling on the suppression motion is unsubstantiated. Springob testified at trial that he saw

Thatcher and defendant go to the ground and came around the car to help. He heard Thatcher say "gun" as the two struggled, and he saw Thatcher and defendant on the ground. Springob tried to help control defendant, grabbed defendant's waist to keep him from squirming out of Thatcher's grasp, and looked under his shirt but saw no gun. They tried to pin defendant down. During the struggle, Springob kneed defendant in the groin, after which they were able to roll defendant over and locate the firearm underneath him. Dkt. 50 at 8-12, 39-40. This testimony came amidst other evidence that defendant had just come from a suspected drug house, that he had been non-compliant with the officers' commands, that Thatcher had just removed a knife from defendant's jacket, and that defendant had resisted Thatcher's attempt to pat him down.[6] Even if Springob's testimony had been considered in connection with the motion to suppress, defendant has shown no likelihood that he would have prevailed on the motion. *See e.g., Smith v. LePage*, ___F.3d___, 2016 WL 4473223 (11th Cir. 2016) (use of stun gun to subdue suspect armed with knife who ignored officers' commands was not excessive); *United States v. Edmonds*, 606 Fed. App'x 656, 660 (3rd Cir. 2015) (tackling resistant defendant was reasonable force); *United States v. Jimenez*, 537 Fed. App'x 678, 680 (9th Cir. 2013) (officers were entitled to use reasonable force on defendant who refused to comply with orders and actively resisted); *Johnson v. Scott*, 576 F.3d 658, 661 (7th Cir.

---

[6] In denying the motion to suppress evidence, the district court found that defendant "attempted to duck out from under Thatcher" as he tried to pat the defendant down for weapons. After the two ended up on the ground, defendant got up first and went to a kneeling position. Thatcher kicked him two or three times in the stomach, causing a black object to fall to the ground, which Thatcher believed to be a gun. Dkt. 18 at 2-3.

2009) (officer's use of force, including police dog, to subdue suspect was objectively reasonable "given the uncertainties that faced [the officer]").

*Ground Seven*

Defendant claims his trial counsel was ineffective for failing to obtain a body language expert. Dkt. 66 at 12. This claim fails for a number of reasons, including the lack of any showing that a body language expert would have expressed an opinion that could have made any difference in the outcome of the proceeding.

*Ground Eight*

Defendant claims his trial counsel "failed to make numerous, specific objections to Officer Thatcher's testimony, which allowed a 'lay witness' to testify as an 'expert' when not qualified, and without notice by the government." Dkt. 66 at 13. As indicated previously, however, defendant has failed to show that Thatcher's stated belief that defendant was trying to hide a weapon from him amounted to an expert opinion, or that an objection to such testimony likely would have altered the outcome of the trial.

*Ground Nine*

This claim is the same as Ground Three except that it is based on trial counsel's representation rather than that of appellate counsel. For the same reasons stated with respect to Ground Three, this claim fails as well.

*Ground Ten*

Defendant contends his trial counsel was ineffective on the motion to suppress by conceding the validity of the initial traffic stop and the officer's right to conduct a pat-down. But defendant fails to show that conceding either of these points was

objectively unreasonable. Thatcher testified at the suppression hearing that the driver of the subject car failed to signal a turn 100 feet before an intersection as required by law. Counsel could have reasonably believed that a challenge to that evidence would be unsuccessful. Thatcher also recounted the circumstances leading to his pat-down of the defendant, including that defendant had just been seen coming from a suspected drug house; he initially failed to comply with instructions to get out of the car; Thatcher recognized defendant from a prior arrest; the prior arrest involved a traffic stop in which defendant was found in a vehicle containing a firearm and methamphetamine; defendant was nervous, sweating and breathing hard; defendant kept his body turned away from the officer; and Thatcher saw a knife clipped in defendant's jacket and removed it. Dkt. 48. Under the circumstances, it was not objectively unreasonable for counsel to forego a challenge to the validity of the stop or the pat-down.

   *Ground Eleven*

   Defendant claims his trial counsel was ineffective for failing "to challenge an alleged statement attributed to the defendant by Officer Thatcher, prior to trial, except as fruit of the poisonous tree." Dkt. 66 at 16.  Defendant is apparently arguing that his attorney was ineffective for not attempting to suppress defendant's post-arrest statement as involuntary. *See* Dkt. 96 at 82-84. As indicated by the trial testimony, however, the Government had substantial evidence that defendant's statement was voluntary. Dkt. 49 at 59-64. The Government introduced evidence that defendant was given *Miranda* warnings before he made a statement, that he denied being under the influence of drugs, that he gave rational responses and appeared in control of his

faculties, and that in view of his extensive criminal history he likely fully understood his rights. Under the circumstances, it may have been a valid strategic choice for defense counsel to forego a pre-trial challenge to voluntariness of the statement. Raising the issue would have required the defendant to testify under oath about the altercation – including his claim that he never possessed the firearm that was found directly under him - and would have given the Government an extra opportunity to cross-examine him about it in advance of trial. *See Strickland*, 466 U.S. at 689 (applicant has burden to overcome presumption by showing that the alleged errors were not sound strategy under the circumstances). But even if counsel should have challenged the statement (*see* 18 U.S.C. § 3501), defendant has still failed to show a likelihood that he was prejudiced by the failure. Defendant claims he was in pain at the time he made the statement, but offers no objective evidence that he suffered an injury that overcame his ability to make a knowing and voluntary decision. He claims he felt compelled to make a statement because he saw his wife being handcuffed, but cites no evidence that the police had no basis to detain her or that this constituted improper police coercion. He further claims that Thatcher made "promises of leniency" to him, but does not identify any such promises or show that they constituted improper coercion to get him to talk. In sum, the record shows that any challenge to the voluntariness of his statement would have been unsuccessful, and defendant has therefore failed to meet the prejudice requirement of *Strickland*.

*Ground Twelve*

Defendant claims that trial counsel was ineffective because he did not subpoena Officer Springob for the suppression hearing.  Defendant first claims Springob's testimony would have "contradicted Officer Thatcher's testimony," but he cites no material contradiction that would have made any difference in the outcome. He also claims that Springob's testimony showed a "greater use of force that transformed [the] investigative detention to [an] arrest without probable cause." Dkt. 66 at 17. But Springob's testimony was essentially that he kneed defendant in the groin while they were wrestling on the ground because defendant was resisting the officers and Springob was concerned that defendant had or might get access to a gun. Defendant shows no likelihood that such testimony would have resulted in suppression of the firearm. Finally, defendant claims that Springob's testimony would have contradicted Thatcher's testimony that the officers were watching a suspected drug house before the stop. But Springob's testimony does not materially contradict Thatcher's testimony, *see* Dkt. 50 at 2-3, and in any event would not have made any difference in the outcome of the suppression hearing.

*Ground Thirteen*

Defendant claims trial counsel was ineffective for failing to provide more information to the trial court regarding the degree of force used against him, particularly after the trial court gave him an opportunity to do so. Dkt. 48 at 48. But defendant fails to show that there was some additional relevant evidence available that would have made a difference on the point addressed by the trial judge – i.e., the "very

limited issue" of whether it was reasonable for Thatcher to bring defendant to the ground and subsequently kick him in the stomach. *Id*. Defendant has shown no deficient performance by his counsel or any prejudice from it.

### Ground Fourteen

Defendant claims trial counsel was ineffective for failing to present evidence "going to the search of the defendant as a Passenger." Dkt. 66 at 19. Defendant provides no further explanation in the motion. This appears to be a restatement of the same argument made in Ground Ten. The court rejects the argument for the same reasons previously stated.

### Ground Fifteen

This claim restates the arguments made in Ground Five. The court rejects the claim for the reasons previously indicated.

### Ground Sixteen

Defendant claims trial counsel was ineffective for failing to seek DNA testing of the firearm and failing to challenge "police mishandling" of the firearm and ammunition. Defendant contends that a test might have shown that the DNA of Jeremy Fisher, and not the defendant, was on the firearm. But even if it did, that would not have proven that defendant did not possess the firearm at the time of the stop. And in light of defendant's apparent efforts to avoid being patted down, Thatcher's testimony that he saw what appeared to be a gun fall from defendant's waistband, Thatcher's testimony that defendant admitted having possessed the gun, the fact that the gun was found directly under the defendant, and the improbable claim that Fisher had discarded

the gun in the exact spot where defendant was wrestled to the ground by the officer, the impact of a favorable DNA test would have been doubtful. Additionally, counsel had to consider the possibility that a DNA test would confirm that defendant handled the firearm, which would have essentially destroyed his defense. As it was, defense counsel was able to bring out the fact that no DNA testing was performed, and that fingerprint testing was done but no identifying fingerprints were produced. Dkt. 50 at 45-46. Defendant fails to show that it was objectively unreasonable for defense counsel not to seek DNA testing of the firearm. *See United States v. Roberts*, 417 Fed.App'x 812, 823, 2011 WL 1134309 (10th Cir. 2011) (counsel reasonably concluded that DNA testing posed more of a risk than being able to argue the absence of such evidence).

Defendant's allegation pertaining to "police mishandling" of evidence seems to allege that his attorney was ineffective for failing to challenge an incomplete chain of custody. Dkt. 96 at 96-101. But chain of custody issues would not have rendered the evidence inadmissible, and defendant's elaborate theories of how evidence might have been tampered with are not sufficient to show that his counsel's performance was deficient or that a failure to object made any difference in the outcome of the trial. *See Manning v. Patton*, 639 Fed.App'x 544, 549 (10th Cir. Jan. 27, 2016) ("deficiencies in the chain of custody go to the weight of the evidence, not its admissibility") (cite omitted).

### Ground Seventeen

Defendant claims trial counsel was ineffective for "fail[ing] to adequately investigate circumstances surrounding defendant's 'alleged statement' to police, including 'Miranda issues' and 'coercive and involuntary nature of statements,' which

allowed Officer Thatcher to distort defendant's statements unchallenged, at trial." Dkt. 66 at 22.

Defendant's § 2255 motion fails to identify any material matters that defense counsel failed to investigate. His massive Reply Brief identifies a multitude of issues that defendant now claims should have been further investigated. But defendant fails to address the significant evidence weighing against his claim that his statement was involuntary, fails to show that counsel's performance fell below an objective standard of reasonableness, and fails to show that the alleged failure to investigate likely made a difference in the outcome.

<u>Ground Eighteen</u>

Defendant claims trial counsel was ineffective for "fail[ing] to impeach Officer Thatcher's inconsistent testimony…." Dkt. 66 at 23; Dkt. 96 at 110-132. But the transcript shows that defense counsel vigorously challenged Thatcher's testimony on cross-examination and in arguments to the jury, and he sought to point out inconsistencies or implausible assertions. Most of the items complained about by defendant were in fact brought up by defense counsel in his examination. The fact that defendant has now thought up some additional points that might have been asked – most of which are marginal issues – does not establish that his counsel was deficient or that he was prejudiced by counsel's performance. "Counsel's decisions regarding how best to cross-examine witnesses presumptively arise from sound trial strategy." *Richie v. Mullin*, 417 F.3d 1117, 1124 (10th Cir. 2005). *See also Strickland*, 466 U.S. at 689 (courts must analyze the attorney's performance without the distorting effects of hindsight). Defendant's

complaints about the cross-examination of Thatcher amounts to nothing more than second-guessing with the benefit of hindsight. The record shows that defense counsel effectively represented defendant's interests.

_Ground Nineteen_

Defendant contends trial counsel was ineffective for "fail[ing] to obtain 'all available discovery' and 'adequately investigate'" a number of matters, including the scene of the stop, the alleged drug house and any occupants of it, the police radio traffic log and patrol car capabilities, police reports by other officers, city policies on arrests and traffic tickets, and defendant's injuries. Dkt. 66 at 24. Defendant contends such an investigation "would have bolstered defense witness testimony … and produced evidence to exonerate defendant." _Id_.

As an initial matter, defendant fails to cite any material evidence that defense counsel failed to discover or to address in the course of the proceedings. Defendant now claims a number of other things could have been investigated, but most of these items have nothing to do with the issue of whether defendant possessed the firearm that was found during the stop. Defendant has now produced an affidavit of an individual named Roger Schmidt, (Dkt. 96 at 179), who says that he talked to defendant and his wife on the on the night of the stop. Even if such evidence had been presented, however, there is no reason to believe it could have affected the outcome of the trial. Similarly, defendant now presents a statement from an individual named Richard Sipes, Dkt. 96 at 180,  who claims to have seen defendant at the suspected drug house on the evening of the stop, and who says "there was not a gun around." But in addition

to obvious potential problems with this witness's credibility, his statement shows no basis for knowing whether defendant had a gun in his waistband or in his car. Any failure to discover such testimony did not prejudice defendant. Essentially, defendant's claim that additional investigation would have produced evidence to exonerate him is unsupported speculation.

### *Ground Twenty*

This claim asserts that defendant's Fifth and Sixth Amendment rights were violated by the admission of expert testimony without notice, by the prosecutor improperly vouching for the credibility of the police officers, and by the prosecutor misstating evidence in closing argument.

The court rejects this claim for the same reasons stated in Grounds Two and Three. Additionally, the court notes that improper comments by a prosecutor violate the Constitution only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Defendant has shown at most only an isolated misstatement or a few objectionable questions by the prosecutor, not misconduct, and no resulting unfairness in his trial. The same is true with respect to the admission of Thatcher's testimony about defendant's movements. As the Supreme Court has noted, the Constitution protects a defendant against a conviction based on unreliable evidence by affording a defendant the means to persuade the jury that the evidence should be discounted as unworthy of credit. Safeguards available to defendants include the right to counsel, the right to confront and cross-examine witnesses, and established rules governing the admission of

evidence. Beyond such safeguards, the Due Process Clause imposes a constraint only when evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Perry v. New Hampshire*, 132 S.Ct. 716, 723 (2012). The errors claimed by defendant do not come close to that standard. There is no such thing as a perfect trial, but defendant's trial was fundamentally fair.

#### *Ground Twenty-One*

Defendant claims trial counsel was ineffective by failing to challenge the PSR or the crimes used to qualify for the ACCA enhancement. For the reasons stated as to Ground One, the court rejects this claim.

#### *Ground Twenty-Two*

Defendant claims his Fifth and Sixth Amendment rights were violated "by the cumulative trial errors and ineffective assistance of counsel." Dkt. 66 at 27. For the reasons already discussed, the court finds defendant has failed to establish that his counsel was deficient, that any deficiencies resulted in prejudice, or that errors in the proceedings rendered his trial fundamentally unfair.

#### *Ground Twenty-Three*

The court will consider defendant's motion for leave (Dkt. 84) as setting forth an additional claim asserting that counsel was ineffective for failing to challenge whether defendant's prior conviction for trafficking contraband in a correctional facility qualified as a serious drug offense under the ACCA. *Id.* at 3. For the reasons set forth previously, however, the court finds that defendant's robbery convictions qualified him

as a career offender under the ACCA, and that any failure by counsel to object to the use of other predicate convictions therefore had no effect on his sentence.

### Ground Twenty-Four

Similarly, the court will grant defendant's additional motion to amend (Dkt. 89) and consider his additional argument that counsel was ineffective for failing to object to use of defendant's 1988 burglary conviction as an ACCA predicate offense. For the same reasons stated above, however, the court finds that any failure to object had no effect on defendant's sentence.

**IT IS THEREFORE ORDERED** this 28th day of October, 2016, that defendant's Motion to Amend his petition (Dkt. 89) is GRANTED, but defendant's Motion to Vacate Sentence under § 2255 (Dkt. 66) is DENIED.

The district court must issue or deny a certificate of appealability when it enters a final order adverse to a defendant. *Rule 11 of the Rules Governing Section 2255 Proceedings*. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The applicant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 283 (2004). In this instance, the court concludes that reasonable jurists could debate this court's resolution of claims relating to defendant's classification as an armed career criminal and the effectiveness of counsel with respect to that classicication. The uncertainty injected by cases such as *Johnson v. United States*, 135 S.Ct. 2551 (2015) and *Mathis v. United States*, 136 S.Ct. 2243 (2016) makes this court's resolution of these issues subject to

reasonable debate. A certificate of appealability is therefore granted as to such claims, but denied as to the remainder of defendant's claims.

___s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE